UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MELDEISHA MCMILLIAN

                              Plaintiff,        Docket No.: 20-cv-1026 (MKV)(KHP)

          -against-

MTA METRO-NORTH RAILROAD
                              Defendant,
----------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT


STEVEN L. BARKAN PC
Steven L. Barkan, Esq. (SB0444)
*Attorneys for Plaintiff*
445 Broad Hollow Rd., Suite 25
Melville, New York 11747
(516) 358-3688

# TABLE OF CONTENTS

Page

TABLE OF CASES ................................................................. i

PRELIMINARY STATEMENT ................................................ 1

STATEMENT OF FACTS ....................................................... 3

POINT I
THE LEGAL STANDARD FOR A MOTION TO DISMISS ........ 6

POINT II                                                                                       9
THE DISCRIMINATION CLAIM IS NOT PRECLUDED BY
THE ADJUSTMENT BOARD'S DECISSION
OR BY THE DOCTRINE OF COLLATERAL ESTOPPEL ........... 8

    A.  Preclusion ............................................................... 8

    B.  Collateral Estoppel Does Not Limit, Preclude or Extinguish
Plaintiff's Non-contractual claims For Violations of Federal State and City
Civil and Human Rights Laws By Defendant ............................ 10

POINT III                                                                                      15
PLAINTIFF HAS PLEADED SUFFICIENT FACTS TO PROVE GENDER
AND SEXUAL ORIENTATION DISCRIMINATION ................... 13

POINT IV                                                                                       18
THE COMPLAINT SHOULD NOT BE DISMISSED EVEN IF
IT FAILS TO STATE A CAUSE OF ACTION ............................ 14

CONCLUSION ...................................................................... 14

# TABLE OF CASES

PAGE

**CASES**

*Abdu-Brisson v. Delta Airlines, Inc.,* 1999 WL 64436, at 3
(S. D. N. Y. Feb. 9, 1999)                                              11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,555-556 (2007).              7

*Bowers v. Hardwick*, 478 US 186, 201 (1986)                            7

*Brennan v. Metropolitan Opera Association Inc. et al,* 729 N.Y.S. 77
(1st Dept. 2001)                                                        10

*Evans v. Ottimo,* 469 F. 3d 278 (2nd Cir. 2006)                        11

*First Nationwide Bank v. Gelt Funding Corp.,* 27 F. 3d 763, 771
( 2nd Cir.)                                                             7

*Gay v. Carlson*, 60 F. 3d 83, 86 (2d Cir. 1995)                        7

*Gilberg v. Barbieri*, 53 N.Y. 2d 285                                   12

Gunther v. san Diego & A. E. Ry. Co., 382 U. S. 257 (1965)             11

*Hawaiian Airlines, Inc. v. Norris,* 512 U. S. 246 (1994)               8

*Hirsch v. Arthur Anderson & Co.,* 72 F. 3d 1085, 1088, 1092
(2nd Cir. 1995)                                                         8

*Huaman v. American Airlines, Inc.* Case number 00 cv 6336
(FB) (MDG) (E. D. N.Y. 2005)                                            8

*Kaufman the Eli Lily & Co.,* 65 N.Y. 449, 455–56,
492 N. Y. S. 2d 584, 482 N. E. 2d 63 (1985)                             12

*Khandhar v. Elfenbein,* 943 F. 2d 244, 247 (2D Cir. 1991)              10

*Leatherman v. Tarrant County Narcotics Intelligence and
Coordination Unit*, 507 U.S. 163 (1993)                                7

*Leonardo Emergency Medical Group Profit Sharing Plan v.
 Phillip Morris Co.,* 75 F. 3d 801, 815 (2nd Cir. 1996)                12

*Mark V. Metro-North Commuter Railroad*, 876 F. Supp. 490

i

(S. D. N. Y. 1994)                                                           7

*Marrese v. Am. Acad. Of Orthopedic Surgeons*, 470 U. S. 373,
380, 105 S. CT. 1327, 84. L. Ed. 2d 274 (1985)                               12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817,
36 L.Ed.2d 668 (1973)                                                        7, 13

*Norwalk Core v. Norwalk Redevelopment Agency*, 395 f. 2d 920,
926 (2nd Cir. 1968)                                                          7

*People v. Plevy*, 52 N.Y. 2d 52                                             12

Ryan v. New York Telephone Company et al, 62 N.Y. 2d 494
(1984)                                                                       12

*Salahuddin v. Cuomo,* 861 F. 2d 40, 42 (2nd Cir. 1988)                      7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 508, 508 (2002)                      7

*Zakrzewska v. The New School*, 2010 W.L. 1791091
(N.Y. May 6, 2010)                                                           8

*Wen Mei Lu et al v. Gamba et al*, 158 A.D. 3d 1032 (3rd dept. 2018)        12

**STATUTES AND RULES**

Railroad Labor Act                                                           8, 9

N.Y.S.H.R.L.                                                                 9

N.Y.C.H.R.L. 8-101                                                           1, 2, 3, 8

F.R.C.P. (8)(a)(2)                                                           7

F.R.C.P. 56                                                                  13

Rule 12 (b)(6)                                                               7, 14

Rule 12(c)                                                                   7, 14

Penal Law 130.52(1)                                                          11

Penal Law 130.55                                                             11

ii

## PRELIMINARY STATEMENT

This is action was commenced by plaintiff, Meldeisha McMillian, in the Supreme Court, County of New York, against MTA Metro-North Railroad (Metro North) for the damages that she sustained as a result of Metro-North's discrimination against her in violation of the Administrative Code of the City of New York as amended by the Local Civil Rights Restoration Act of 2005( NYCHRL). The defendant thereafter removed this action to this this Court based upon plaintiffs complaint relating to the Railroad Labor Act arbitration. Plaintiffs complaint, including all allegations and causes of action therein was drafted for filing in state court in accordance with the applicable rules of New York State's Civil Practice Lawyers and Rules (CPLR) as amended.

The Gravamen of the complaint is the discriminatory actions that were taken against plaintiff McMillan after nine and one half  years of employment as well as her allegations of suffering: (a) job suspension without pay prior to the employer's full investigation, (b) immediate arrest by the MTA Metro-North police prior to any investigation,  (c) a company self-serving disciplinary hearing that resulted in, (d) plaintiff's termination in all capacities based upon her gender and sexual orientation as a result of an  incident  that allegedly occurred on October 8, 2016 based upon the perjurious complaints of a fellow employee, Shine Williams, a member of the LGBTQ community  which caused defendant to suspend and then terminate plaintiff as result of her being a heterosexual, African American female without even questioning her and (e)) refusing to reinstate plaintiff after defendant was informed that plaintiff was a acquitted of the criminal charges after Williams changed his testimony in the criminal trial thus informing defendant that William's complaints of plaintiff's sexual misconduct had been false.

At the time, the Plaintiff was a carman and joined Williams, a coach cleaner, and two other Metro-North employees while awaiting her next train. Williams, who was born a biological female underwent surgery to become a male, complained to defendant that, at that meeting, plaintiff had asked him how large his penis was and if it worked as well as groping him. When plaintiff returned to work on October 12, defendant without further investigation or even questioning plaintiff suspended plaintiff and had her led away in handcuffs. At the disciplinary hearing held pursuant to the Collective Bargaining Agreement (CBA ) defendant terminated plaintiff even though defendant's own investigation revealed that the two unbiased witnesses did not hear or observed the acts that Williams testified had occurred and plaintiff's denial. The

1

motivation for defendant's action against plaintiff was that it only considered Williams to be a member of a protected class, LGBTQ, and not plaintiff, a heterosexual black female and thus it was "safe" to tramp upon he civil rights under the NYCHRL and discriminate against her.

2

## STATEMENT OF FACT

On December 24, 2019 the plaintiff Alicia McMillan, commenced an action against the defendant, MTA Metro-North Railroad in the New York County Supreme Court. (Defendant's Exhibit A, Complaint) The complaint contained four causes of action. The first was for violation of the New York City Administrative Code and Restoration Act of 2005 for claims of discrimination based on sexual orientation during which defendants failed to create an effective way to prevent discrimination and harassment,  it affirmatively prosecuted plaintiff and terminated plaintiff's employment and misused its rules to address discrimination to discriminate against plaintiff resulting in unemployment discrimination and termination of her employment; the second cause of action is also a violation of the New York City Administrative code for unlawful gender and sex discrimination as well as retaliation; the third cause of action is for collateral estoppel  against the Special Board of Adjustment and the fourth cause of action that the Arbitration award should be reversed because it was arbitrary and capricious.

The Complaint pleads that plaintiff was employed by the defendant as a Car Inspector from 2010 until she was terminated on January 5, 2017. That she was a heterosexual African American female and a member of a protected class. (Exhibit A at 5 & 6)

The Complaint identifies Shine Williams, a Metro-North employee, who was born female and underwent sex change surgery to identify as a male, who complained that on October 8, 2016 McMillian grabbed his crotch and asked him if it worked an if it was big. (Exhibit A at 7) Williams with two co-workers at the time, Mr. Furrs and Mr. Bratts, when plaintiff joined the group. (Exhibit A at 9)

3

When Plaintiff returned to work on October 12th she was taken out of service and arrested by the MTA police as a result of complaints made by Shine Williams. (Exhibit A at 10)

McMillian was never interview by Metro-North but arrested when she returned to work and suspended without pay. In addition a temporary Order of Protection was obtained on William's behalf on October 13, 2016 to keep plaintiff away from Williams.  She was released from jail by the court and ordered by defendant to attend a Metro-North  disciplinary "trial" (Exhibit A at 10, 11, 12, & 14)

That Metro-North never conducted an investigation of William's complaints prior to arresting plaintiff suspended her without pay. (Exhibit A at 15)

The charges brought by defendant pursuant to the Collective Bargaining Agreement (CBA) were:

"Conduct unbecoming a Metro North employee;  violation of Metro North's policy against sexual harassment and equal opportunity policy(21 – 014 A and B); violation of Metro-North's workplace violence prevention policy(10 – 016); violation of general safety instruction 200.1. On October 8, 2016, you groped and touched another Metro-North employee, asked explicit questions about his genitalia and questioned his gender identity." (Exhibit A at 13)

That Metro-North's actions were based upon plaintiff's sexual orientation in violation of the law and Metro-North's stated policies against discrimination in the work place. and were based upon the differing sexual orientation between plaintiff and Williams because of which plaintiff was treated differently than Williams. (Exhibit A at 16 & 17)

The complaint continues to discuss the trial procedure of the trial that  Metro-North conducted in which no witnesses were sworn; that Williams testified that plaintiff questioned his sexuality and ability to perform sex because of his gender change operation and groped him which allegations were denied by plaintiff. That Furr, who was present, did not observe plaintiff touch Williams as William claimed, nor did he hear plaintiff question Williams sexuality; that

4

another test coworker, Mr. Batts, was not called to testify even though requested by plaintiff. (Exhibit A 19-23)

The Complaint described various issues of Metro-North's bias in its investigation and "trial" exhibiting how it treated Plaintiff differently than Williams. Ms. Cotto, who was employed by Metro-North as an EEO and Diversity Manager testified about her investigation of the incident in which she stated that that's Mr. Batts and Furr were interviewed and did not observe plaintiff touch Williams that they saw plaintiff make a gesture and Williams jump back. She never obtained a written statement from these men and never interviewed plaintiff. She failed to perform an investigation as set forth by Metro-North's rules and procedures. (Exhibit A at 24-29) Additional bias against plaintiff was set forth when the hearing examiner employed by Metro- North over objection permitted adverse testimony against plaintiff that the police office, who wrote the charges, was permitted to sit in the trial claiming that she was there to protect Williams from plaintiff and testified as to what Williams said. On January 6, 2017 plaintiff was notified that she was found guilty of the charges and the penalty that was assessed was dismissal. (Exhibit A at 30-34)

Pursuant to the CBA plaintiffs union appealed this decision to the Metro-North Labor Relations Department which was denied and on on March 29, 2017 plaintiffs union requested that the matter be docketed for hearing before the Special Board of Adjustment. (Board) (Exhibit A at 35-37)

That on October 13, 2016 Metro- North police, Detective Rosario, charged plaintiff with violations of penal Law 130.5 to (1) forcible touching and 130.55 sexual abuse in the third degree. This matter was tried in Criminal court of the City of New York during which William's testimony differed from what he testified to in the Metro-North trial and the case was dismissed

5

Case 1:20-cv-01026-MKV   Document 16   Filed 04/19/20   Page 10 of 18

and the Certificate of Disposition exonerating plaintiff was issued on July13, 2017. (Exhibit A 38-40)

That defendant was appraised of the verdict and refused to reinstate plaintiff. (Exhibit A at 41)

The Board heard this matter on January 17, 2019 and denied plaintiff's claim contending that it was not allowed to consider plaintiffs exoneration of the criminal charges but had to base its entire decision only upon the Metro-North trial transcript even though this hearing was a sham since plaintiff was not permitted to call witnesses; question defendant's witnesses in detail; witnesses were not sworn under oath and Penalties of perjury; the only eyewitness to testify besides plaintiff supported plaintiff and the hearing examiner was also an employee defendant. As such evidence against plaintiff and the findings were clearly against the evidence and, as such, arbitrary and capricious and based upon plaintiffs sexual orientation as a heterosexual female as opposed Williams,  who identified himself as a trans-gendered male. (Exhibit A 42-45)

The complaint also stated the defendants actions terminating plaintiffs and refusal to reinstate her after she was acquitted of the criminal charges were also in retaliation for opposing defendants unlawful discrimination practices. ( Exhibit A at 46)

That defendants actions were malicious and caused the following damages. (Exhibit A at 47)

Thereafter the complaint lists the four cases of action.  The first two violation of the New York City human rights law. The third for collateral estopple  based upon plaintiff's acquittal of the criminal charges and the fourth for reversal of the arbitrators decision because it was arbitrary and capricious and not based on fact.

**POINT I**
**THE LEGAL STANDARD FOR A MOTION TO DISMISS**

In order to survive a motion to dismiss, an employment discrimination complaint only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 508, 508 (2002). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. The complaint does not need to "contain specific facts establishing a prima facie case of discrimination under the framework set forth . . . in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." *Swierkiewicz*, 534 U.S. 508 at 508. Further, it is the moving party who has the burden of proving that plaintiff failed to state a claim upon which relief may be granted and that the complaint failed to plead sufficient facts to state a claim "that is plausible on its face". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,555-556 (2007). Metro-North has utterly failed to meet any such burden in its moving papers before this court.

For the purposes of Rule 12 (b)(6) or Rule 12(c) motion, the court must accept the plaintiff's factual allegations as true. See *First Nationwide Bank v. Gelt Funding Corp.,* 27 F. 3d 763, 771 ( 2nd Cir.) cert. denied 513 U.S. 1079 (1994). Further, the Court should construe the plaintiff's allegations liberally, since the rules only require general or notice pleading rather than detailed fact pleading, F.R.C.P. 8 (a); *Salahuddin v. Cuomo,* 861 F. 2d 40, 42 (2nd Cir. 1988). In *Salahuddin*, supra the Court indicated that:

> "Statements should be plain because the principal function of pleadings under the federal rules is is to give the adverse party fair notice of the claim asserted to enable the party to answer and prepare for trial."

The court in this regard is under an obligation to construe the plaintiff's allegations liberally and determine if the allegations plausibly provide for relief on any possible theory, *Bowers v. Hardwick*, 478 US 186, 201 (1986); *Norwalk Core v. Norwalk Redevelopment Agency*, 395 f. 2d 920, 926 (2nd Cir. 1968). Also see *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). A plaintiff must, however, allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion to dismiss under Rule 12 (b)(6) and Rule 12(c) the Court, may only consider the facts alleged in the documents that were attached as exhibits or incorporated by

7

reference in the pleadings as well as matters which the Court may take judicial notice of, *Hirsch v. Arthur Anderson & Co.,* 72 F. 3d 1085, 1088, 1092 (2nd Cir. 1995).

In applying these standards of review, we also ask the court to take judicial notice of the New York CPLR pleading requirements because the Complaint was initially filed in state court and then removed by defendant to this federal district court. Plaintiff has pled, no federal discrimination claims, only causes of action under NYCHRL which are not subject to Title VII's heightened pleading requirements and standards of review under the court's holding in *Zakrzewska v. The New School,* 2010 W.L. 1791091 (N.Y. May 6, 2010) but rather the broader and more liberal remedial standards of review for cases involving violations of city human rights laws.

Plaintiff requests that the court takes judicial notice of the fact that Williams filed a charge of discrimination with the EEOC on December 24, 2014 and that on august 14, 2016the EEOC issued a determination of cause on the merits concluding that Williams was a victim of discrimination because of his transgender status and sex based steryotyping.

**POINT II**
**THE DISCRIMINATION CLAIM IS NOT PRECLUDED**
**BY THE ADJUSTMENT BOARD'S DECISION**
**OR BY THE DOCTRINE OF COLLATERAL ESTOPPEL**

**A. Preclusion**

Lawsuits brought pursuant to Federal civil rights statutes and NYSHRL and NYCHRL laws are not preempted by the RLA. *Hawaiian Airlines, Inc. v. Norris,* 512 U. S. 246 (1994); *Mark V. Metro-North Commuter Railroad,* 876 F. Supp. 490 (S. D. N. Y. 1994); *Huaman v. American Airlines, Inc.* Case number 00–cv 6336 (FB) (MDG) (E. D. N.Y. 2005). In *Huaman,* supra, the court stated with regard to preemption under the RLA:

> " As pertinent here, the RLA "requires the establishment of arbitration panels known as Adjustment Boards' to deal with disputes between employers and employees in the airline industry." *Gay v. Carlson,* 60 F. 3d 83, 86 (2d Cir. 1995) (citing *Hawaiian Airlines, Inc. v. Norris,* 512 U. S. 246 (1994)). "Disputes that are spawned by grievances or by interpretations or applications of (collective bargaining) agreements ["CBAs"], known as 'minor disputes,' must be resolved exclusively under the arbitration procedures established by the Railroad Labor Act." *Id.* At 87. By contrast, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines, Inc. v. Norris,* 512 U. S. at 256.

8

Plaintiff's right to be free from discrimination in his employment arises under Title VII, §1983 and §1981, the NYSHRL and NYCHRL and is, therefore, *independent of the CBA*. As a result, claims seeking relief under those statutes are not preempted by the RLA. See *Abdu-Brisson v. Delta Airlines, Inc.*, 1999 WL 64436, at 3 (S. D. N. Y. Feb. 9, 1999) (holding that a claim under the NYSHRL and NYCHRL "that focuses on the issue of an employer's discriminatory animus does not rest its interpretation of the CBA such that preemption is required.").

In this matter, plaintiff's claim is that defendant discriminated against her and she was treated differently than Williams, who was a Transgender male and part of the LGBTQ, because of her gender and sexual orientation, a heterosexual female, resulting in plaintiff's termination from her employment with defendant. Defendant also caused plaintiff to be arrested by its police force and charged with forcible touching and sexual abuse in the third degree described by the MTA Metro-North police officer as:

> "On or about October 8, 2016 at about 1:15 PM inside 89 E. 42nd St. In and state of New York, the defendant intentionally, and for no legitimate purpose, forcibly touched the sexual and other intimate parts of another person for the purpose of the degrading and abusing such person, and for the purpose of gratifying to defendant's sexual desire, the defendant subjected another person to sexual contact without the latter's consent." The charge was brought by MTA detective Annalisa Rosario.

Defendant argues that its adverse employment actions were legitimized by proffering its Metro-North disciplinary trial verdict under the CBA which found the plaintiff guilty; the appeal to the defendant's Humane Resource Department under the CBA affirming and the appeal to the Special Board of Adjustment under the CBA affirming the above determination of the Metro-North "trial" which was convened, held and determined before an employee of defendant.

As pleaded in the complaint, defendant failed to perform proper investigation as set forth in its own rules and regulations, its own hearing officer permitted dubious testimony and ignored the testimony of eyewitnesses that supported the plaintiff and instead favored the unsupported testimony of Williams over that of the plaintiff and the only other eye witness to testify, Metro-North not allowing the other eye witness to testify, even after defendant's EEO and Diversity Manager testified that the two eye witnesses did not observe plaintiff touch or grope Williams or hear the verbal exchange that Williams testified that he had with plaintiff. These actions on the part of defendant were taken by it to discriminate against plaintiff because she was a heterosexual

9

female and Williams was a transgender male. A heterosexual female is a member of the other protected class. *Brennan v. Metropolitan Opera Association Inc. et al.* 729 N.Y.S. 77(1st Dept. 2001) in that matter the court stated:

> "The IAS court held as a matter of first impression, that plaintiff is protected, as a heterosexual female, under New York City law against employment discrimination  based on sexual orientation. As the court explained, ' The fact that discrimination against heterosexuals is not as pervasive as that found against homosexuals does not change the clear wording of the municipal law does it lessen the impact of such prejudices on the individuals involved". ...

These actions by defendant caused plaintiff to sustain a loss of past and future pay and benefits, emotional distress and attorney's fees. Further, defendant had an opportunity to right this wrong after it was informed that plaintiff was found to be not guilty by a New York City Criminal Court after trial because William's testimony was different then the claims that he made to Metro-North, but  Metro-North refused to do so.

The RLA is a federal enactment regulating the railway and airline industry including disputes between management and labor arising under collective bargaining agreements, and on its face was not intended by its draftsman or legislated to render plaintiff's rights to bring suit under federal civil rights statutes (and corresponding state and local human rights laws) null and void.  On its face, plaintiff contends that the RLA fails to address, enunciate and/or protect non-contractual civil and human rights of railway workers such as plaintiff.


B. **Collateral Estoppel Does Not Limit, Preclude or Extinguish Plaintiff's Non-Contractual Claims For Violations of Federal State and City Civil and Human Rights Laws By Defendant**

The defendant is arguing that this action should be dismissed because it conducted a self-serving internal company hearing before a company appointed and paid Metro-North employee and a subsequent decision by its Human rights department to determine:

> "Conduct on becoming a Metro North employee; violation of Metro-North policy against sexual harassment an equal opportunity policy(21 – 014 a and B); violation of Metro-North workplace violence prevention policy(10 – 016); 200.1. On October 8, 2016, you groped and touch another Metro-North employee, asked explicit questions about his genitalia and questioned his gender identity"

10

This internal company hearing was appealed by McMillian's union under the collective bargaining agreement and arbitrated under the auspices and rules of the Special Railway Labor Board of Adjustment. The designated arbitrators limited themselves to the hearing transcript and self-serving investigation report and upheld McMillian's discipline. The arbitrator's refused to consider the Plaintiff's exoneration of all charges in the criminal Court claiming that the scope of its review was limited to the Metro-North trial transcript even though the criminal court found plaintiff not guilty of violations of the penal Law 130.52(1), forcible touching; and Penal Law 130.55, sexual abuse in the third degree described as:

> "On or about October 8, 2016 at about 1:15 PM inside 89 E. 42nd St. In and state of New York, the defendant intentionally, and for no legitimate purpose, forcibly touched the sexual and other intimate parts of another person for the purpose of the degrading and abusing such person, and for the purpose of gratifying to defendant's sexual desire, the defendant subjected another person to sexual contact without the latter's consent." The charge was brought by MTA detective Annalisa Rosario

In this the arbitrators were incorrect. The Arbitrators had the power to obtain testimony under oath require the attendance of witnesses and production of records, etc. 45 U.S.C. 157. Arbitration; *Gunther v. San Diego & A. E. Ry. Co.,* 382 U. S. 257(1965) (Engineer was terminated by the railroad when the railroad's doctor found him unfit. Engineer was examined by his doctor and found to be fit. Railroad refused to reinstate him. Engineer requested Adjustment board mediation and the Board had engineer examined by a three doctor panel which found him to be fit. Railroad appealed to the District Court and it overturned the Boards ruling which was affirmed by the Circuit court. The U.S. Supreme Court reversed.)

The arbitrator's decision as to the contractual collective bargaining dispute  was limited to interpretations of the CBA. They limited their review to the Metro-North transcript even though a number of material personnel did not appear as witnesses or were not produced by Metro-North for cross-examination by plaintiff. The fact that the Metro-North hearing officer allegedly upheld the version of the William's testimony against the testimony of a unbiased witness who supported the plaintiff's testimony or Metro-North's own EEC person who testified that the two witnesses, disputed Williams claim against plaintiff who is a black heterosexual female. What is not argued or mentioned in the arbitration decision is the fact that the Metro-North paid the hearing officer's salary. Further, as indicated by the arbitrator's findings, the issue of discrimination was never at issue before the Metro-North hearing officer or the Special Board of Adjustment for the very

11

reason that the issues at plaintiff's company hearing and union arbitration arose under the collective bargaining agreement and were decided and solely confined to the hearing transcript and exhibits and plaintiff's civil and human rights claims were not at issue in those proceedings.

The Federal Courts follow the laws of New York State with regard to preclusion. *Evans v. Ottimo,* 469 F. 3d 278 (2nd Cir. 2006) In *Evans* the court stated:

"We apply the preclusion law of New York. See *Marrese v. Am. Acad. Of Orthopedic Surgeons,* 470 U. S. 373, 380, 105 S. CT. 1327, 84. L. Ed. 2d 274 (1985). Under New York law, collateral estoppel bars reiteration of an issue when (1) the *identical issue* necessarily was decided in the prior action and is *decisive* of the present action, and (2) the party to be precluded from relitigating the issue *had a full and fair opportunity to litigate the issue* in the prior action. *Kaufman v. Eli Lily & Co.,* 65 N.Y. 449, 455–56, 492 N. Y. S. 2d 584, 482 N. E. 2d 63 (1985) (citations omitted); see also *Khandhar v. Elfenbein,* 943 F. 2d 244, 247 (2D Cir. 1991). "the party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues… whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Kaufman,* 65 N.Y. 2d at 456.

Collateral estoppel is a narrow species of *res judicata* which could preclude a party from relitigating in a subsequent action issues clearly raised in a prior proceeding and decided against it. *Ryan v. New York Telephone Company et al,* 62 N. Y. 2d 494 (1984), *Wen Mei Lu et al., v. Gamba et al.,* 158 A.D. 3d 1032 (3d Dept. 2018). The court in *Ryan,* supra, stated:

"In addition, with the party against whom collateral estoppel is asserted claims that he was not afforded a full and fair opportunity in the prior administrative proceeding to contest the decision now said to be controlling he must be allowed to do so. …"

"A determination whether the first action or proceeding genuinely provided a full and fair opportunity requires consideration of "the 'realities of the [prior] litigation', including the context and other circumstances which *** may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him", (*People v. Plevy,* 52 N. Y. 2d 58, 65, 436 N. Y. S. 2d 224. Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation. *Gilberg v. Barbieri,* 53 N. Y. 2d 285; *Schwartz v. Public Administrator,* 24 N.Y. 2d 65, 72)"

As stated above the arbitrators refused to consider new evidence and incorrectly believed that they only had to rely on the transcripts decision.

12

The issues presented in this lawsuit are significantly different than the issues presented at the hearing and Arbitration which were limited solely to collective bargaining rights. Those issues had nothing in common with the present claims which refer to Metro-North's unlawful motives in dispensing progressive discipline and bringing those disciplinary charges against plaintiff and inflicting an extremely harsh pecuniary penalty while not even charging or investigating William's even after it learned that he lied when interviewed and at the hearing in order to falsely accuse plaintiff of sexual harassment.

Accordingly, this lawsuit should not be precluded because of the prior internal self-serving hearing or the ensuing collective bargaining agreement based arbitration requiring interpretation of the relevant collective bargaining dispute on the basis of collateral estoppel.

### POINT III
### PLAINTIFF HAS PLEADED SUFFICIENT FACTS TO PROVE GENDER AND SEXUAL ORIENTATION DISCRIMINATION

Defendant contends that McMillian failed to plead sufficient facts to support her allegations. Defendant attempts to prematurely and erroneously apply the *McDonnell Douglas* analysis that is more properly asserted and applied by this court in the context of a dispositive motion under F.R.C.P. Rule 56 for summary judgment or by the fact finding jury if this action proceeds to trial.  While defendant agrees that plaintiff claimed that she was a member of a protected class; that she suffered an adverse employment action, it disputes that the adverse action occurred under circumstances giving rise to the inference of discrimination by contending that "…plaintiff does not allege that anyone who did what she did was treated less harshly." (Defendant's brief at pg. 16). This is a *McDonnell Doug*lass defense and is not appropriate in a motion to dismiss. Coincidently, almost all of the cases that defendant cited were Rule 56 cases.

Defendant also contends that the allegations in the complaint are merely conclusory. This is not a valid argument in a motion brought pursuant to Rule 12(b) , since the pleadings are deemed to be true.  As stated in the factual pattern under  "FACTS" above, the complaint properly and sufficiently pled plausible allegations regarding a plausible basis for a jury to infer Metro-North's sexual bias  and retaliatory animus suffered by plaintiff on account of her being  a heterosexual black woman when William's false claims of sexual harassment and touching were instantly believed by Metro-North management without even questioning plaintiff to find out if they were true. When Plaintiff reported to work she was isolated and arrested by the MTA police as well as

13

being suspended without pay. In this she was treated differently  then Williams and every other heterosexual at Metro-North.

### POINT IV
### THE COMPLAINT SHOULD NOT BE DISMISSED
### EVEN IF IT FAILS TO STATE A CAUSE OF ACTION

The complaint should not be dismissed even if this court shall determine that it fails to state a cause(s) of action under Rule 12(c) under the same standards of review as applied in Rule 12(b)(6) motions to dismiss. If the Court determines that the pleading is insufficient or fails to properly apprise the defendant of sufficiently pled facts so that it could answer, the Court should not dismiss the complaint, but only require and grant leave for the complaint to be amended. F.R.C.P. Rule 15(a); *Leonardo Emergency Medical Group Profit Sharing Plan v. Phillip Morris Co.,* 75 F. 3d 801, 815 (2nd Cir. 1996)

### CONCLUSION

It is respectfully requested that the Defendant's motion be denied in all respects.  Further, if the Complaint is deemed by this court to be insufficient or to fail to properly appraise the Defendant of Plaintiff's claims  Plaintiff requests that it be permitted to amend the Complaint to cure any such deficiency(s) and that the action not be dismissed.

Dated: Melville, New York
     April 13, 2019

                STEVEN L. BARKAN P.C.

                By Steven Barkan (SB 0444)
                445 Broad Hollow Road
                Suite 25
                Melville, New York 11747
                (516) 358-3688

To:    LITTLER MENDELSON, PC
        900 Third Avenue
        New York, NY 10022
        Att: Eric Witkin, Esq
        Joseph E. Field, Esq

14